UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
| --- | --- | --- | --- |
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

N/A                                                    N/A

**Proceedings:**          ORDER GRANTING PLAINTIFF'S MOTION FOR REMEDIES AND JUDGMENT [159].

## I.    Introduction

Plaintiff Securities and Exchange Commission ("SEC") filed a complaint in this action on May 30, 2018 against defendants William Alverson, Katherine West, and Curative Biosciences, Inc. ("Curative"), and relief defendants Northeast Capital Group, LLC ("Northeast") and Panacea Holdings Inc. ("Panacea").   The SEC alleged violations of Section 5 of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934.   On March 11, 2020, a jury found Alverson, West, and Curative liable for all the alleged violations.

Before the Court is the SEC's motion for remedies and final judgment.   For the below reasons, the SEC's motion is GRANTED.

## II.    Factual and Procedural Background

Alverson is the former Chairman of the Board of Curative and West, Alverson's wife, is the former President and CEO of Curative.   Dkt. 160-16.   The SEC's case at trial focused on two schemes concocted by Alverson and West and material misrepresentations related to those schemes.

The first scheme involved Curative's issuance of 21.23 million shares of stock to two third-parties, Steven Patton and Charlie Don't Surf, Inc. ("CDS")—an entity controlled by Patton—to pay for

_____ : _____

Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

purportedly bona fide services that Patton and CDS performed for Curative.   *Id.*; *see also* Dkts. 160-5, 160-11.   However, Patton and CDS never performed more than de minimis services for Curative.   Dkt. 160-5 at 43–44.   Rather, Curative's purpose in issuing the shares was for Patton to sell the shares to the public and funnel the proceeds back to Alverson and West.   *Id.*   Indeed, shortly after each issuance of shares, Alverson directed Patton to sell the shares on the open market and to wire the proceeds to Northeast, an entity under the control of Alverson and West.   *Id.* at 47–54; Dkts. 160-12, 160-13.   West sent Patton fraudulent invoices listing services that Northeast purportedly rendered for CDS, even though Northeast never performed any services for CDS.   Dkt. 160-5 at 54–56; Dkt. 160-16.   Patton wired more than $2 million from the sale of the shares to Northeast Capital and retained less than $130,000 of the proceeds.   Dkt. 160-5 at 54; Dkt. 160-13.

The second scheme involved Patton purchasing a Florida state-court judgment that Curative owed to a third-party named Siesta Flow.   At Alverson's direction, Patton created an entity known as Surfside Partners, Inc. ("Surfside"), which agreed to pay the $95,000 judgment that Curative owed Siesta Flow in exchange for 19.1 million shares of Curative stock worth approximately $1.5 million. Dkt. 160-5 at 57–58; Dkt. 160-9.   Alverson and Patton had previously agreed that Patton would sell the shares and wire the proceeds back to Alverson, West, or an entity they controlled, and that Patton would keep a portion of the proceeds for himself as compensation.   Dkt. 160-5 at 56.   Although the Florida state court approved the settlement agreement, it did so without knowledge of the prior agreement between Alverson and Patton.   *Id.* at 61; Dkt. 160-9.   Curative began issuing shares to Surfside in October 2012, and Patton—at Alverson's direction—sold the shares and wired the proceeds to Northeast and Panacea, another entity under the control of Alverson and West.   Dkt. 160-5 at 61–62; Dkts. 160-14, 160-15.   West created fraudulent invoices to cover up the illegal nature of the wire transfers.   Dkt. 160-5 at 61–65.   Through this second scheme, entities under the control of Alverson and West received more than $1.9 million from Surfside.   Dkt. 160-15.

Alverson and West made false statements related to these schemes on publicly available forms that Curative filed with the SEC.   First, when Alverson and West identified the total number of shares issued "for services" in fiscal years 2011, 2012, and 2013, they included the shares issued to Patton and CDS as part of the first scheme previously described.   Dkt. 160-16.   Alverson and West also stated that Curative had previously issued 20.5 million shares pursuant to an equity compensation plan for bona fide services, including the 17.23 million issued to Patton as part of the first scheme.   Dkts. 160-7, 160-

_____ :_____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

16.   As noted above, however, those shares were not legitimately issued "for services" because Patton and CDS only performed de minimis services for Curative.   Dkt. 160-5 at 43–44.   Second, regarding the shares issued to Surfside, Alverson and West stated that Surfside—the entity that purchased the Siesta Flow judgment—was "a third party and a non-party to the legal action against [Curative]."   Dkts. 160-7, 160-8.   The jury later found that this statement was materially false and misleading because it failed to disclose Surfside's relationship with Alverson and West.

On May 30, 2018, the SEC filed its complaint against Alverson, West, and Curative, alleging violations of Section 5 of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934.   Dkt. 1.   On March 11, 2020, a jury found Alverson, West, and Curative liable for all the alleged violations.[1]   Dkt. 154.

On April 1, 2020, the SEC filed the instant motion for remedies and final judgment.   Dkt. 159. On July 2, 2020, the Court ordered the SEC to file a supplemental brief regarding the impact of *Liu v. SEC*, 140 S. Ct. 1936 (2020), on the SEC's requested relief.   Dkt. 171.   The SEC filed its supplemental brief on August 10, 2020.   Dkt. 173.   Alverson, West, and Curative were authorized to respond to the SEC's supplemental brief but failed to do so.

### III.    Discussion

The SEC seeks the following remedies against Alverson, West, and Curative:

(1) permanent injunctions prohibiting them from committing any future violations of Section 5 of the Securities Act and Section 10(b) of the Securities and Exchange Act;

(2) permanent injunctions prohibiting West and Alverson for participating, directly or indirectly, in the issuance or sale of any security (except for purchasing or selling securities on a national exchange for their own accounts);

---

[1] As to the Section 5 allegations, the Court instructed the jury to only consider the shares issued as part of the second scheme above (*i.e.*, the shares issued to Surfside).   Dkt. 149.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

(3) permanent injunctions prohibiting Alverson and West from serving as officers or directors of a public company;

(4) permanent injunctions prohibiting Alverson and West from participating in an offering of penny stocks, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock;

(5) an order that Alverson and West disgorge, on a joint and several basis, all of their ill-gotten gains received during the five years before the SEC filed its complaint, plus prejudgment interest;

(6) an order imposing civil monetary penalties against Alverson and West; and

(7) an order holding the relief defendants Northeast and Panacea are jointly and severally liable with Alverson and West for the illegal proceeds they received.

Mot. at 1–2.

The Court will address the requested injunctive relief followed by the disgorgement and other monetary penalties.

> **A.    Alverson, West, and Curative Will Be Prohibited From Committing any Future Violations of Section 5 of the Securities Act and Section 10(b) of the Securities and Exchange Act and Participating, Directly or Indirectly, in the Issuance or Sale of Any Security.**

The Court has the authority to grant a permanent injunction under both the Securities Act and the Securities and Exchange Act.   *See* 15 U.S.C. § 77t(b); *see also* 15 U.S.C. § 78u(d)(1).   However, there is "[n]o per se rule requiring the issuance of an injunction upon the showing of [a] past violation." *SEC. v. Koracorp Indus., Inc.*, 575 F.2d 692, 701 (9th Cir. 1978).   Rather, the SEC bears the burden of showing there is a reasonable likelihood of future violations of the securities laws.   *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | | Date | October 22, 2020 |
|---|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | | |

Although the existence of past violations may give rise to an inference that there will be future violations, courts must nevertheless assess the totality of circumstances in predicting the likelihood of future violations. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). In doing so, courts consider the following factors: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his or her conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations. *Id.* (citing *Murphy*, 626 F.2d at 655).

The Court finds that the first factor weighs in favor of granting the requested injunctive relief. West and Alverson argue that they "believed they were following the required legal processes" and therefore lacked scienter. Opp. at 5. However, by finding West and Alverson liable for violations under Section 10(b) of the Securities and Exchange Act, the jury implicitly found that they acted with knowledge or recklessness. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063 (9th Cir. 2000) ("Knowledge or recklessness is required for a finding of scienter under § 10(b)."). Moreover, the evidence shows that (1) Alverson directed Patton to sell fraudulently issued shares on the open market and to wire the proceeds to entities under the control of Alverson and West, and (2) West sent Patton fraudulent invoices to cover up the illegal activity. Dkt. 160-5 at 47–56; Dkts. 160-12, 160-13, 160-16. Under these circumstances, the scienter factor weighs in favor of granting the requested injunctive relief.

The second factor also weighs in favor of granting the requested injunctive relief. Contrary to their argument that the conduct was a "one-time isolated transaction," Opp. at 6, West and Alverson made multiple material representations on required public disclosures over several years. Dkt. 160-5 at 43–44; *see also* Dkts. 160-7, 160-8, 160-16. Moreover, West and Alverson fraudulently issued Curative shares and netted the proceeds on multiple occasions—once to CDS and once to Surfside. *See* Dkt. 160-5 at 43–44, 47–65; *see also* Dkts. 160-9, 160-12, 160-13, 160-14, 160-15, 160-16. The Court cannot accept the characterization of this conduct as a "one-time isolated transaction."

The third factor also weighs in favor of granting the requested injunctive relief. As the SEC notes, both Alverson and West submitted sworn declarations in which they stated that this case was "frivolous" and denied making false and misleading statements in publicly filed SEC forms. Dkt. 98-4 at ¶ 16; 98-5 at ¶ 14; 100-2 at ¶¶ 3–4; 100-3 at ¶¶ 1–2. Moreover, even in their opposition, West and

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

Alverson still attempt to argue that—despite all of the evidence to the contrary—they "believed that they were following the required legal processes." Opp. at 5. The Court is not satisfied that these statements reflect recognition by West or Alverson of the wrongful nature of the conduct.

As for the fourth factor—whether there is a likelihood of future violations due to the defendant's professional occupation—West and Alverson note that they have a "30 year history of working in the securities profession." Accordingly, this factor weighs in favor granting injunctive relief. *Sec. & Exch. Comm'n v. Baccam*, 2017 WL 5952168, at *9 (C.D. Cal. June 14, 2017) (finding "a significant possibility that the [d]efendant would repeat the unlawful conduct" in part because defendant had "more than a decade of experience in the securities industry").

Finally, as to the sincerity of the assurances by West and Alverson that they will not commit future violations, the Court acknowledges the declarations submitted by West and Alverson and their statements therein.[2] However, courts must consider the totality of the circumstances, *see Fehn*, 97 F.3d at 1295, and in light of the foregoing discussion—and, in particular, the argument by West and Alverson that they "believed that they were following the required legal processes," Opp. at 5—the Court finds that the totality of the circumstances here weighs in favor of granting the requested injunctive relief.

Accordingly, all defendants will be prohibited from violating Section 5 of the Securities Act or Section 10(b) of the Securities and Exchange Act, and Alverson and West will be prohibited from directly or indirectly participating in the issuance, offer, or sale of any security, except for purchasing or selling securities on a national exchange for their own accounts.

---

[2] West asserts that, because her compensation when working for public companies has historically been in the form of stock awards, a prohibition on buying and selling stock would be "an immediate mortal financial blow to [her] family [and her family] would not be able to survive." Dkt. 161-1 at ¶ 18. However, the injunction does not apply to purchasing or selling securities on a national exchange for West's own accounts.

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

#### B. Alverson and West Will Be Barred From Serving as Officers or Directors of Public Companies and From Penny Stock Offerings.

The Court has the authority to bar individuals who violate federal securities laws from serving as an officer or director of a public company if "the person's conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. § 78u(d)(2). The Court also has the authority to bar those some individuals from participating in an offering of any penny stock if the SEC shows that the person was participating in such an offering when he or she violated the securities laws.[3] 15 U.S.C. § 78u(d)(6); *see also Sec. & Exch. Comm'n v. Heart Tronics, Inc.*, 2015 WL 13343180, at *7 (C.D. Cal. Feb. 18, 2015), *aff'd sub nom. Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823 (9th Cir. 2018).

Courts consider the following factors when determining whether to implement an officer-director bar or a penny stock bar: (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he or she engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur. *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998).

Applying those factors here, the Court finds that an officer-director bar and a penny stock bar are both warranted. The conduct for which West and Alverson were found liable by a jury was egregious, repetitive, and undertaken while West and Alverson were directors or officers of Curative. Specifically, while Alverson was Curative's Chairman of the Board of Directors, he concocted an illicit scheme to fraudulently sell securities to a third-party and directed the proceeds to entities he controlled. West, as President and CEO of Curative, participated in this scheme by creating fraudulent invoices to cover up the illicit trading.[4] These illicit schemes occurred twice—once with transfers to CDS, and once with

---

[3] The SEC notes—and neither West nor Alverson dispute—that, at all relevant times, Curative stock was a penny stock within the statutory definition. Mot. at 12.

[4] The Court is not persuaded by West's assertion that no false invoices were made because Mr. Patton requested the invoices be prepared and Alverson testified that the subjects of the invoices "accurately described the consulting services and operational expenses that were in fact ongoing." Opp. at 7. These assertions are contradicted by the jury's findings regarding West's liability.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

transfers to Surfside—and, as discussed above, West and Alverson acted with knowledge or recklessness in both scenarios.

West and Alverson argue that none of the funds were personally used by Defendants and that they were instead "solely used for ongoing company operations and expenses."   Opp. at 5–6. However, West and Alverson identify no case law supporting the premise that the decision to use the funds for non-personal purposes counsels against imposing the requested injunctive relief.[5]   Moreover, as the SEC points out, West previously declared under oath that the ill-gotten funds directed to Curative's expenses were loaned to Curative—*i.e.*, Curative was obligated to repay West.   Reply at 4. Accordingly, even if Curative ultimately used the funds for some legitimate business expenses, West was entitled to repayment—in full—of all the ill-gotten proceeds that West loaned to Curative.

In light of the foregoing, the Court will enter permanent injunctions prohibiting Alverson and West from serving as officers or directors of a public company and from participating in an offering of penny stocks, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock.

**C.     Alverson and West Will Be Barred From Serving as Officers or Directors of Public Companies and From Penny Stock Offerings.**

1.     Analysis

"[A] district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws.   Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (citing *First Pacific Bancorp*, 142 F.3d at 1191).

The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment."   *Platforms Wireless*, 617 F.3d at 1072 (citing *SEC v.*

---

[5] The claim that West and Alverson did not use the ill-gotten funds for personal purposes is relevant for the disgorgement inquiry and is discussed below.   *See infra* at 10.

:

_____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

*First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)).   Disgorgement need be "only a reasonable approximation of profits causally connected to the violation."   *First Pac. Bancorp*, 142 F.3d at 1192 n. 6.   However, once the SEC establishes a reasonable approximation of defendants' actual profits, the burden shifts to the defendants to demonstrate the figure is *not* a reasonable approximation. *Platforms Wireless*, 617 F.3d at 1072.   This is because defendants are "more likely than the SEC to have access to evidence establishing what they paid for the securities, if anything, to whom the proceeds from the sales were distributed, and for what purposes the proceeds were used."   *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1261 (9th Cir. 2013) (citing *Platforms Wireless*, 617 F.3d at 1096).

Here, the SEC seeks disgorgement in the amount of $654,630.   The Court finds that this amount is a reasonable approximation of the ill-gotten gains of West and Alverson in the five years preceding the filing of the SEC's complaint.   Dkt. 160-15 (table identifying cash payments sent from Surfside to Panacea and Northeast); *see also Kokesh v. SEC*, 137 S. Ct. 1635, 1645 (2017) (holding five-year limitations period in 28 U.S.C. § 2462 applies to claims for disgorgement in SEC enforcement cases).

West and Alverson have not met their burden of demonstrating that the figure is not a reasonable approximation of their ill-gotten gains.   On this point, West and Alverson simply argue that the funds received were used for ongoing company expenses.   Opp. at 5–6.   However, as discussed below, this argument is unavailing.

2.      Application of the *Liu* Factors

As noted above, on July 2, 2020, the Court ordered the SEC to file a supplemental brief regarding the impact of *Liu v. SEC*, on the SEC's requested relief.[6]   Dkt. 171.   In *Liu*, the Supreme Court directed lower courts to consider three additional factors to ensure that disgorgement orders are consistent with the traditional contours of equitable relief: (1) whether the disgorgement order is for the benefit of investors; (2) the appropriateness of joint and several liability; and (3) the deduction of legitimate business expenses.   140 S. Ct. at 1942–50.

---

[6] As noted above, the defendants here were permitted to respond to the SEC's supplemental brief but failed to do so.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|

| Title | *SEC v. Curative Biosciences, Inc. et al.* |
|---|---|

The Court finds that the disgorgement requested by the SEC is consistent with the equitable principles identified in *Liu*.   First, the SEC asserts that it "intends to distribute the funds to investors harmed by the Alversons' sale of unregistered securities."   Supp. Brief at 1.

Second, joint and several liability is warranted because West and Alverson were "partners engaged in concerted wrongdoing."   *Liu*, 140 S. Ct. at 1949.   Alverson directed Patton to wire the proceeds of fraudulently issued shares to entities under the control of West and Alverson, and West created fraudulent invoices to cover up the illicit scheme.   West and Alverson did not provide any evidence indicating that one of them "did not enjoy the fruits of the scheme, or that other circumstances would render a joint-and-several disgorgement order unjust"—indeed, they provided no argument whatsoever regarding the SEC's proposed disgorgement order.   *See Liu*, 140 S. Ct. at 1949. Accordingly, joint and several liability is appropriate here.

Third, the amount of disgorgement requested by the SEC here is consistent with the requirement articulated in *Liu* that courts deduct legitimate business expenses.   This is because the funds were not used for business expenses at all; rather, West and Alverson *loaned* the funds to Curative.   Dkt. 100-2 (West Decl.) at ¶ 51 ("Mr. Patton wired funds to my entities, Northeast Capital Group and Panacea Holdings, Inc., which in turn were *loaned* to [Curative] used to pay [Curative's] business expenses."). West is presumably entitled to repayment of the loan by Curative.[7]   Accordingly, if the Court were to characterize this loan as a legitimate business expense, West and Alverson would retain all of their ill-gotten gains when Curative repays the loan.   This result would be inconsistent with the purpose of disgorgement: to deprive a wrongdoer of unjust enrichment.   *Platforms Wireless*, 617 F.3d at 1096 (citing *First Pacific Bancorp*, 142 F.3d at 1191).

Accordingly, the Court finds that West and Alverson are jointly and severally liable for disgorgement in the amount of $654,630.

---

[7] West and Alverson do not dispute the SEC's observation that West loaned the funds to Curative.   Indeed, as noted above, they did not respond to the SEC's supplemental brief at all.

_____ : _____
Initials of Preparer
                        PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|
| Title | *SEC v. Curative Biosciences, Inc. et al.* | | |

 

**D.    Alverson and West Will Be Ordered to Pay Prejudgment Interest on the
Disgorgement.**

When a defendant commits securities fraud, the disgorgement remedy should "include all gains
flowing from the illegal activities."   *SEC v. Cross Fin. Servs., Inc.*, 908 F.Supp. 718, 734
(C.D.Cal.1995), *aff'd sub nom. SEC v. Colello*, 139 F.3d 674 (9th Cir.1998).   Such "gains include
prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity."   *Id.*

The Court finds that prejudgment interest is warranted here.   Such interest is necessary to
compensate harmed investors and ensure that West and Alverson do not profit from their ability to loan
fraudulently obtained funds to Curative.   Accordingly, the Court will award prejudgment interest on the
disgorgement amount of $654,630.   The interest, compounded quarterly, amounts to $193,221.82, as
calculated based on the same interest rate used by the Internal Revenue Service.   *See* Dkt. 160 (Bentsen
Decl.) at ¶ 3, Exh. B.

Accordingly, West and Alverson are jointly and severally liable for $847,851.82.

**E.    Alverson and West Will Each Be Ordered to Pay A Civil Penalty.**

The Court has the authority to impose civil penalties for violations of the Securities Act and the
Securities and Exchange Act.   *See* 15 U.S.C. §§ 77t(d), 78u(d)(3).   Those statutes establish three tiers
of penalties.   *See id.*   A third tier penalty is the most severe penalty and is available when the violations
(1) involve "fraud, deceit, manipulation, or reckless disregard for a regulatory requirement" and (2)
"directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to
other persons."   *Id.*   A third-tier penalty amounts to $160,000 per violation.   *See id.*; *see also* 17
C.F.R. § 201.1003.

The Court finds that third-tier penalties are warranted here.   Alverson concocted an illicit
scheme to fraudulently sell securities to a third-party and directed the proceeds to entities he controlled.
West, as President and CEO of Curative, participated in this scheme by creating fraudulent invoices to
cover up the illicit trading.   Alverson and West also made materially false statements on publicly filed
securities forms, thereby deceiving investors and harming individuals who purchased shares of Curative
or held shares of Curative.   Accordingly, third-tier penalties are warranted here.

 

 

 

 

 

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|

| Title | *SEC v. Curative Biosciences, Inc. et al.* |
|---|---|

The Court will impose four third-tier statutory penalties, one for the illegal sales and three for the material misrepresentations in the publicly filed forms.   *See Sec. & Exch. Comm'n v. Jammin Java Corp.*, 2017 WL 4286180, at \*5 (C.D. Cal. Sept. 14, 2017) (noting courts have discretion to order a third-tier penalty for each statutory violation), *aff'd sub nom. U.S. Sec. & Exch. Comm'n v. Weaver*, 773 F. App'x 354 (9th Cir. 2019).   This amounts to a $640,000 penalty for West and Alverson each.

> **F.      Default Judgment is Warranted Against the Relief Defendants, Each of Which Will Be Jointly and Severally Liable for A Proportional Share of The Disgorgement Amount and Prejudgment Interest.**

As noted above, the ill-gotten proceeds from the sales of shares by CDS and Surfside were wired to two entities controlled by West and Alverson: Panacea and Northeast.   Those entities were named in the SEC's complaint as relief defendants.   Dkt. 1.   Panacea and Northeast never appeared in this matter.   The SEC seeks default judgment against Panacea and Northeast in order to hold them jointly and severally liable.   Mot. at 19.

The Court finds that default judgment is warranted against Panacea and Northeast.   First, the Court finds that the SEC satisfied the procedural requirements to obtain a default judgment.   *See* Dkt. 160 (Bentsen Decl.) at ¶ 4; *see also* FRCP 55(a); Local Rule 55-1.

Second, the *Eitel* factors[8] weigh in favor of a default judgment.   *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).   The SEC will be prejudiced if it is unable to obtain relief from Panacea and Northeast because, if the ill-gotten gains are held by those parties, they could avoid disgorgement by not responding.   The merits of the SEC's claim—and the sufficiency of the SEC's complaint—were established at trial.   Although the sum of money at stake is large, the totality of the circumstances warrant default judgment here.

---

[8] These factors are (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.   *Eitel*, 782 F.2d at 1471–72.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:18-cv-00925-SVW | Date | October 22, 2020 |
|---|---|---|---|

| Title | *SEC v. Curative Biosciences, Inc. et al.* |
|---|---|

In the Ninth Circuit, "[c]ourts may also exercise their broad equitable powers to order disgorgement from non-violating third parties who have received proceeds of others' violations to which the third parties have no legitimate claim."    *Sec. & Exch. Comm'n v. World Capital Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017).

Here, Panacea and Northeast have no legitimate claim to the proceeds that Patton wired to them. Accordingly, the Court will order disgorgement of those proceeds from Panacea and Northeast with prejudgment interest.    *See Cross Fin. Servs., Inc.*, 908 F. Supp. at 734.

Of the total disgorgement amount, Northeast received $611,420 and Panacea received $43,210. Dkt. 160-15.    Prejudgment interest on these amounts is, respectively, $180,468 and $12,754.

Accordingly, Northeast and Panacea will each be jointly and severally liable with Alverson and West for their proportionate share of the disgorgement award and prejudgment interest.

## IV.    Conclusion

For the foregoing reasons, the SEC's motion for remedies and final judgment is GRANTED.    A separate judgment will issue.

_____  :  _____

Initials of Preparer

PMC